Good morning, Your Honors. My name is Chloe Davis, and I'm here on behalf of Appellant Michelle Stimatze v. the County of Geary County, Kansas. May it please the Court, Your Honors. This appeal arises out of Ms. Stimatze's employment as the Director of Geary County's Visitors Bureau for the Board of County Commissioners of Geary County, Kansas. Ms. Stimatze began serving in this role in 2017, and she remained in this role until her constructive discharge in June of 2021. Between 2017 and 2021, Ms. Stimatze received favorable employment feedback from the County. Her work product was described as good and excellent. However, in 2021, when a new commissioner was elected to the Board, Ms. Stimatze began to notice concerning behavior. For example, Commissioner Giordano, which was the newly elected commissioner, requested that Ms. Stimatze allocate government funds to certain line items without proper Board approval, which was outside of County policy. Commissioner Stimatze also refused to allocate necessary funding to the Visitors Bureau, which was also outside of County policy. Ms. Davis, if I may jump right in. In rejecting the retaliation claim, the District Court cited our decision in Leverington, and in that case, a certain language sticks out to me, which says that essentially what actually the crux of the matter, and I think Leverington used that word in a public concern inquiry, is what is actually said. Well, it gives me some pause when I look at the amended complaint. The amended complaint never says what your client said. It speaks in generalities about what she talked about in terms of subjects and topics, but doesn't use the language of what she said, which if you look at a number of our cases, they in fact say I said X, Y, and Z at X setting. Why isn't that a problem for you? Yes, Your Honor, and I do believe that that is the crux of what's before the Court today, is essentially the proper pleading standard. I will agree, Your Honors, that the amended complaint does not contain the exact words of what Ms. Steinmade said at the meetings and her speech. In Leverington, I do believe, however, that they were, they had the exact language of what Ms. Leverington said to the police officer, and they were able to determine based on her speech that it was her speaking to personnel issues or a personal issue with the officer that was involved. I would also point out, however, Your Honor, that this Court does have decisions where the exact speech was not analyzed and the Court was able to analyze the speech based off of topics and categories, which is reflected in the Garcia case. The Court yet determined in Garcia that the speech was related to personnel matters or personal grievances in the workplace. However, they were able to still analyze the topics or categories of the speech as opposed to having the actual speech. Your Honors, our main argument here today in relationship to the amended complaint not including the exact language would be that Ashcroft doesn't require that. It requires a pleading standard where there's enough factual information to state a plausible claim for relief, and here we believe that requiring the pleading to contain the exact language of what was stated would be beyond that threshold or that standard. Well, go ahead. Well, on paragraph 32, and I'm going to be referencing your amended complaint, on paragraph 32, it seems to me at least one thing that gives me some pause, I'm not saying it's definitive, but one thing that gives me some pause is that even if you get out of the realm of language, one has to sort of piece together exactly what it is that is alleged to be problematic in terms, well, of concern, of public concern in the speech. For example, in paragraph 32, it says the plaintiff raised concerns about, quote, spending allocations, but that doesn't tell us what those concerns were. It doesn't tell us how those concerns relate to other paragraphs in the complaint, and so, I mean, you're making us work here in a way that I'm not sure that Iqbal does require. I mean, for example, you go to paragraph 17, and it speaks about allocations related to the Convention and Visitors Bureau. Are you saying that that's a matter of public concern? Your Honor, I think the distinction here would be that it was Commissioner Giordano's interference with the allocations to the Visitors Bureau, and looking back at the language of paragraph 32, I should have included references, for example, the speech referenced in paragraph 17, 18, and 19, because those are the concerns that Ms. Steinmetz spoke out about, both the interference with the allocation, the allocation issues themselves being outside of policy, and then the allocation to certain line items, which were also outside of county policy. So 17, 18, and 19, as it relates to, and I, the Giordano doing things that are against county policy, I, let me just put that in one category for a second. I mean, the idea that he wouldn't approve defendants, well, he wouldn't approve allocations related to the Convention and Visitors Bureau. Why doesn't that just put us in the zone of, you know, that's a personnel problem. I mean, that's her purview, right? And he wouldn't give her the money she wanted to do her job in that position. What is a public concern about that? Why do I care about that? Sure. Thank you, Your Honor. So I think that Commissioner Giordano refusing to allocate proper funding to the Visitors Bureau would fall beyond a personnel grievance issue because it does impact the community at large. They are dealing with tax dollars and properly funding certain departments would be, I think, an issue that would go beyond any personnel grievances between Ms. Steinmetz and Commissioner Giordano. Let's try Garcetti, in which you had, I think at the heart of a public concern, a prosecutor and decisions that a prosecutor makes about the liberty of individuals. Well, the Supreme Court said that was a personnel problem, right? That's your personal problem. And so why is, if that is a personnel problem, why would I care about the Convention and Visitors Bureau if the Supreme Court didn't care about that public issue in Garcetti and, well, it wasn't a public issue, the issue about the prosecutor there? Yes, Your Honor. I think here there would not be a large difference in the analysis there. However, I think I would just revert to the answer about the fact that the refusal to allocate So in Garcetti, it impacted one person's freedom of speech, who was the plaintiff appellant. Here, refusal to properly allocate funding would impact the community at large. Let's focus for a second on paragraph 16, and in particular, the line that says Defendant Giordano would request that plaintiff allocate funds to certain line items that were essentially against county policy. Give me your best argument as to why that is a matter of public concern, and what you would identify as probably the lead case that I should look to, is it Garcia or some other case, in determining that I should view that as a matter of public concern? Your Honor, so there are several cases actually that indicate that public officials doing things that are outside of that public entity's policies are considered matters of public concern, because it shows the public official's impropriety or unethical behavior. And I apologize, you initially listed 17, 18, and 19. Don't you believe that that's in that within the zone of what you're concerned about too? Yes, Your Honor. I would also include 16. I apologize. Okay. Okay, please go on. So, I won't go back to where I was at in my outline, just because we've already discussed it, but I will just reiterate here, Your Honor, that the applicable standard is the Ashcroft-Iqbal standard, and not some other heightened pleading standard. And we would argue that Judge Malgren's decision would demand a higher pleading standard, based on the fact that... Counsel, can I ask you, weren't you counsel in the Von Busch case? I was. Okay, how do you distinguish that case from the other? So first, Your Honor, I will clarify that in the Von Busch case, they were analyzing a different prong of the Garcetti-Pickering test. But it was the same problem. Same defendants, same problem in the complaint. Yes, Your Honor. It was the same pleading standard issue, and the point I believe that that case hinged on was the courts could not determine whether or not the speech related to Ms. Von Busch's official duties, because the complaint did not include any description of those official duties. While that would apply here, it would be our position that that was not an issue at the lower court. Judge Malgren didn't reach that analysis. He found that Ms. Steinmetz was speaking as a private citizen, and that she was not speaking to her official duties. But another panel from this court determined that the complaint in that case also did not meet the requisite pleading standards. And I guess I'm just trying to figure out whether it's the same defendants, the complaint's similar. Granted, it was a different prong, but ultimately it all comes down to the same issue, not enough facts to substantiate the different elements that you're required to meet. So I'm just trying to figure out what is the fundamentally as a substantive matter. As a substantive matter, Your Honor, the pleading standard, there would be no difference. We would argue the same thing that we argued on that case, that Ashcroft's standard does not require the specific speech to be included in the complaint. So as a substantive matter in terms of pleading standard, what the court determined in Von Busch would also apply here. So I like to think of myself as a pragmatist. Why not just add two, three more paragraphs in the complaint? You could have solved both of these problems in both of these cases, it seems to me. Yes, Your Honor. Several years later, I do wish that I could go back and do that. It would have made things much easier. Not that I wouldn't want to be here today. Oh, yes. Oh, when I was on that side of the bench, I loved it. Yeah. So if that were a path still available, I would have taken it. But you were alerted to it by their motion. I was. And didn't respond. If this had been a pro se complaint, I think a lot of the magistrate judges would say, you need to tighten up your complaint. You need to add some stuff. That's for pro se's. And the pro se would put what facts were available. Here we have counsel. And we don't need to help you in those ways. You have a responsibility. So why not respond to the motion? Yes, Your Honor. So you mean the initial, so the the complaint was a complaint. There's a motion to dismiss on this ground. And the easiest way to respond would be to request an opportunity to amend the complaint. Yes, Your Honor. I, to answer your question directly, I was approximately one year out of law school at this time. That was that's not an excuse. And which leads me back to my answer that looking back, I should have done that. What I will say here is that looking back at my analysis at that point in time, I did believe that what I had included, which was that Ms. Steinmetz spoke out about Commissioner Giordano's improper funding allocation, what I described in the complaint. I did feel at that point in time, and I still do, that it satisfies the Ashcroft-Iqbal standard. Counsel, let me ask you this, though. You said that the duties component number one on Garcetti is not at issue. Well, your opposing counsel is putting that forward as an alternative grounds for affirmance. So it is before us, right? Yes, Your Honor. And to that point, first, I would request that the court opt not to exercise the discretion and instead remand. However, and I would like to reserve at least one minute, but I do want to finish my answer to your question. Please do. We would argue that these statements were made at public forum meetings to other members of the public and not in any way pursuant to her official duties. And I think that there are several cases that indicate that because these statements were made at events that were outside of her duties, she was not at any type of Visitor's Bureau event sponsored by the Visitor's Bureau, full of Visitor's Bureau personnel, that this would fall outside of her official duties. She was not the Commissioner's supervisor. She had no duty to report this behavior on the part of the Commissioner. So we would argue that it does fall outside of her official duties. You'll get your minute. Let me ask you this question. I take it count two is not at issue here, right? Correct. Okay. Thanks. Okay. May it please the Court. Patrick Linden on behalf of the Board of County Commissioners for Geary for former government official to allege a plausible claim that she engaged in speech protected by the First Amendment as part of pleading an employment retaliation claim under 42 USC section 1983. And here we're talking about the first two prongs of a five-prong test. It is not enough to merely allege that one engaged in protected speech to survive a motion to dismiss. Rather, there must be sufficient fact information in a plaintiff's pleadings to demonstrate, one, that the speech was not made as part of the former official's duties, or two, that it involved matters of public concern. Here, the District Court dismissed plaintiff's claims, finding that the plaintiff's amended pleadings lacked sufficient information to plausibly allege that she had engaged in protected speech regarding matters of public concern. While that decision was correct, it is Appellee's position that based upon the applicable cases and the conclusory allegations of the pleadings, that there is also an affirmative basis, an alternative basis rather, to affirm the dismissal of plaintiff's claims in this matter. Well, let me start with public concern. At least as I read your brief, it suggested that she needed to plead counsel, needed to plead specific quotations in her complaint to provide the sufficient facts to support a public concern argument. Is that your position? Quotations would certainly be most likely to get you over the threshold. I think you need factual information, not just a conclusory statement of public concern. Well, she does more than, I mean, this amended complaint does more than say the plaintiff spoke on matters of public concern. She identifies topics, as she pointed out, that the plaintiff spoke on, does she not? She does include topics. However, there is not enough about the context of those topics, the form of discussion, to really get an understanding of whether those issues rose to a level of public concern. Let's try this. In footnote four of a case called Morris, which is one of our cases, you have, our court said this, quote, a narrow range of speech where the subject matter is clearly identified, that there's a narrow range of speech where the narrow range of speech included the area of corruption. Why isn't it enough then, and to be clear, what the court was saying that is if you identify certain topics, they are invariably of public concern, and therefore they should be matters that within the scope of the legal test would be sufficient. Well, why isn't it enough that plaintiff here pled that defendant Giordano was doing things that were against county policy? Why doesn't that sniff of corruption, and why, therefore, wouldn't it be enough to say that to let you know that the public in that county really cares about him violating county policy? I would respond that irregularities or deviations for public policy do not equate corruption, per se, and therefore, you need more. I hear you. I hear you saying that, but why is that necessarily the case? If we're construing the well-pled facts and the likeness favorable to the plaintiff, if the plaintiff says that he was violating county policy, well, it would have been lovely if there were more facts in there, but why is it that a topic that the public would care about when it goes to allegation of dollars, mind you, and public dollars? Yeah, I think it's a matter of the significance of the issue. I mean, as I think it was discussed during Appellant's opening argument, that there are a range of these issues. Not every deviation from a county's policy rises to a level of public concern. It could be simply an issue of minimal importance, and we need more in the pleadings to know whether it crosses that line. Otherwise, every minor tick-tacky variegation from county policy suddenly becomes the basis for a potential Section 1983 claim. I think there needs to be some articulation of what the issue of public concern was and to give the court, the district court in this instance, enough information to understand that, yes, this rose to a level where it was a matter of public concern and not simply a matter of disagreement between two government officials about how county policy should be executed. If there are government dollars at play and there is an intentional allocation of those dollars in a way that violates county policy, what is it that you think we should have that would allow us to determine that it is a matter of public concern? I mean, I get your point. I mean, I get your point that there's a there's a point where it's essentially de minimis, but really what I'm trying to focus on is in the context of a motion to dismiss. I mean, you know, you can win later. I mean, at a motion for summary judgment, why isn't that enough in a motion to dismiss to get you over the hurdle? You know, in this instance, I think if we're talking about budgeting on line items, it might be the criteria. What are the line items? Are we talking about a matter of a few dollars on a on the CVB's budget? Are we talking an item of a thousand dollars or ten thousand dollars on the line on budget? Isn't that what discovery is for? Ultimately, discovery would reveal that, but here we are trying to at least determine if there is enough to pass the initial threshold. The initial threshold being plausible. Plausibility that there is enough that the issue at play is truly a matter of public concern. And here the allegations are so vague and conclusory, we don't know if it crosses that threshold. What does plausible mean? Plausible means, at least in my mind, more likely than not. It's not quite a preponderance, but, you know, does it pass? I start sounding like we're talking about a pornography case, but does it pass the smell test? You kind of know it if you see it. But here, again, we're dealing with something that is so vague. That's worrisome. Well, I reach for that simply because of the, we're talking about something where there is not a clear, bright line that is drawn by the cases, nor is it really possible given their large variety of circumstances. So what's the underlying principle? You kind of said, does this case deserve to go forward? And that sounds like a pragmatic decision, not a statistical one. And it seems like it depends a lot on context. For example, we're much more lenient, I think, in finding the complaint plausible when the essential facts are known by the defendant, not by the plaintiff. Here we have something that the plaintiff knew, probably knew better than anybody else. Does that factor into whether this is plausible, meaning there's enough here to justify proceeding? Well, I think that's an important point. Because using the word plausible gets me very, doesn't get me very far. You draw an important point. I mean, the plaintiff is the master of their own complaint. And here we're dealing with the plaintiff's own speech, which presumably she knew the contents of, the context of it, what was said. She is in a position to provide that information. It is not information necessarily that a defendant would have. Because here, if there are allegations of speech in private context, that may not be circumstances where a defendant is aware of those particular contexts or what was said. So is that bare allegation enough to put a defendant on notice of what was said, the topics of the speech, whether it's a matter of public concern? I would submit that it's not. Well, I think Judge Hart's question is a good one. And it's something I've been thinking about a little bit. I mean, the point, I think, is to separate those cases which potentially have some merit, and from those that are completely hypothetical, conjectural, what have you. Doesn't this complaint, I mean, whether or not the exact language that was used, doesn't, you get the gist of it. The plaintiff is complaining that was fired after reporting misconduct in her private capacity. That's a plausible allegation. It seems like we're playing a game of gotcha with these 12B6 motions, that if you don't have enough in there, then we're going to, you know, you're going to ask the judge to toss your case. But ultimately, could her complaints have been more thorough? Sure. Is it a paragon of pleading? No. But does it set out a plausible claim for relief? Again, I would argue that it doesn't. There is one important gap here in the pleading. The pleading starts out with a discussion of things that the plaintiff observed. And this issue with the line items and the interference, these are things that the complaint says that the plaintiff observed. Then it shifts to what was said. And if you take a look at what was actually stated, there is no connection directly made between the two. There is no allegation that what she said in private or in public context were the same issues identified earlier in the pleading. Now, I guess there's a question whether you can raise an inference, whether she spoke on those things. I would respond that I don't know if that is a reasonable inference based upon what is alleged and given the fact that, again, the plaintiff is the master of their own complaint. If there was a connection, why was that not stated in the pleading? Well, again, we can go back to whether it should have been more artfully crafted. Yes. But I don't know whether it takes a great leap to look at paragraph 32, which uses exactly the language of allocations, spending allocations, which could encompass both the comment about Giordano spending money on line items that were beyond policy or, you know, yes, I think that was the allegation in 16, or it could relate to the Convention Bureau. But what we do know is the same language, spending allocations were raised by her in her private capacity. That's what 32 says. You go back to 16 and 17, you know, I don't think it takes a rocket scientist to connect those two. I mean, so why is that not sufficient? Again, I don't think that connection is explicitly made. I think it's inferential, and I would submit that it's not necessarily a reasonable inference. It is inferential, but inferences are taken in the light most favorable to the plaintiff. Reasonable inferences, yes. Okay. Reasonable inferences, yes. So I'm down to three minutes. I want to just briefly, with the Court's permission, talk about the issue that the District Court decided on the public, whether or not the speech was in connection with the plaintiff's public duties. And here, I think as Judge Garcia noted, there is some tension between our case and the way the District Court handled it here, and the Vaughn Bush case that this Court recently decided back in December. And in that case, on very similar allegations, the only difference being different plaintiff, different position, and an allegation of termination in Vaughn Bush versus constructive termination in this case, a three-judge panel of this Court found that the plaintiff's petition did not pass muster in the sense that it did not plead speech that was outside of the scope of the former official's public duties. And I think given that the two complaints closely parallel each other in their substance on this issue, we would disagree with how the District Court resolved that issue. Reading the District Court judge's order and memorandum, it appears that a lot of the Court's concern was, or its rationale was, that she was not being paid for the speech. I am not certain where that finding came from. It is not alleged in the petition anywhere, and in fact, we have the same problem in this case as we did in Vaughn Bush, in that the petition does not, or the complaint, does not say what the plaintiff's duties were, what the scope of the duties were, and to demarcate how the speech in question was outside of the scope of those duties. All we have is a conclusion statement. It does say that she was there in a private individual capacity. It says that she showed up and spoke in that capacity. And what, I mean, you can claim that's conclusory, but it seems to me that when you say you're in a private individual capacity, that's a capacity as opposed to some other capacity, which would be an official capacity. And so I, it's, it, she says that throughout. So why is it that enough? I think that is conclusory, though. We don't know, again, the context of the speech, the nature of the speech. How would she do it in a way that's not conclusory? How do you say I'm speaking in my private capacity in a non-conclusive way? You know, ultimately, and this gets to an issue that was also addressed in the Vaughn Bush petition. Wait, are you going to answer my question? Yes. It is that I think she has to allege on that first prong that also the speech falls outside the scope of her official duties. I mean, she could say all day long that, oh, I'm speaking in my personal capacity, but if it's on the very things that she has official responsibility for, I don't think her own statement to that necessarily is merits credit. If she alleged that, wouldn't we be here with you telling us that that was a conclusory statement, that she spoke outside of her official duties? That is a conclusory statement. Well, that, that is. But what I'm saying is that you have to look at the We know that she was a county employee. I mean, the first paragraph, I'm an employee of the Defendant Board of County Commissioners. And then she later tells us when I showed up at these meetings, I was speaking in my individual capacity. Doesn't that establish by the virtue of the complaint a juxtaposition between those two? I do think there's a difference here when you're talking about an employee who's the head of the organization talking about issues for that organization. And I don't think they can necessarily easily step outside of that role. She was the head of the Convention Business Bureau talking about matters of import to that organization. I see that I am running out of time. First, are there any other questions from the panel? All right. Very good. Well, we would therefore ask that the court affirm the order dismissing the claims against the Board of County Commissioners in all respects. And I appreciate the panel's time. Thank you. One minute, 15, please. Yes. Thank you, Your Honors, for allowing rebuttal. Just wait a second. Okay. Okay. Thank you, Your Honors, for allowing rebuttal. I did want to touch on, I want to make two main points here, of course, between fielding questions. I would like to bring to the court's attention the Garcetti, or I'm sorry, the Garcia case, which was attached as an attachment to the brief. That's district court case, right? Correct, Your Honor. It is actually the case that Judge Milgren cited. It's in a footnote when he reached what I see as the crux of his decision, where he says that there's not enough detailed information to get to the speech to determine whether or not it touched on a matter of public concern. In Garcia, the Garcia court specifically said that although that complaint did not include the exact specific language, that it did include topics or categories of information in speech. Although great wisdom does come from district courts. It is a district court. So I think you might be better served by seeing if you could find a case from this that would help you. Yes, Your Honor, and I agree. I think more so I'm pointing out that Garcia does not support Judge Milgren's conclusion there. I would also like to point out, and the judges have already kind of touched on this. Time is fleeting. Your time is up again, so you better make your point quick. Yes, Your Honor. She was at a public monthly meeting in her private individual capacity. She was complaining about the commissioner trying to allocate funds outside of county policy, and then she was constructively discharged. Thank you, counsel. Thank you. Case is submitted.